## JOHN STUMPF

*v.*

## CHARLES OSTERHAGE.

1. EJECTMENT—*right of recovery.* In ejectment the plaintiff must rely on the strength of his own title, and must show in himself a legal title to all the land he recovers, or the judgment can not be sustained.

2. RECITALS *in deed—upon whom binding.* The recitals in a recorded deed or bond will bind no one except the grantors and those claiming under them by grant subsequent to the recitals.

3. LIMITATION—*under act of* 1835. Proof of possession of land for more than seven years under a title deducible of record from a person authorized to sell by the order of a court, without proof of residence upon the land for that period, does not establish a bar to an action of ejectment.

4. BOUNDARY—*deed as evidence.* In ejectment, where there is a dispute as to the boundary of a tract of land, contained in a grant of four hundred acres, a prior deed embracing a part of the land involved is admissible in evidence, whether the defendant is able to connect himself with such deed or not, as tending to shed some light upon the question of the location of the grantee's boundary line from the points named in the deed, and fix the land conveyed by subsequent deeds of other parties, and as explaining what part of a larger tract was conveyed by a prior owner to one person, and what part to another, under whom the defendant claims.

APPEAL from the Circuit Court of Monroe county; the Hon. AMOS WATTS, Judge, presiding.

Messrs. TALBOTTS, for the appellant.

Mr. WM. WINKELMAN, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

The judgment in this case can not be sustained. In ejectment the plaintiff must rest on the strength of his own title, and must show a legal title to all the land he recovers.

The land embraced in the verdict and judgment is a part of an old grant or confirmation to Leonard Harnish, by the United States, about the end of the last century, now lying in Monroe county. The whole tract is described in the

government ·confirmation as survey 410, and as containing 400 acres; and by the government survey it was put down as 53.37½ chains wide from east· to west, and as 75 chains long from north to south. A branch or creek runs in a westerly course through the land (survey 410), entering its eastern boundary about 24 chains south of the north-east corner, and leaving the tract on its western boundary about 10.18 chains south of the north-west corner of the survey. This creek, after entering the land at its crossing on the eastern boundary, bears a little north of west for about 13 chains, and there turns sharply to the south and runs a little west of south a distance of about 8 chains. Its general course from this point is nearly west for about 7 chains, and from this point the creek meanders to the north-west until it reaches the western boundary of the old survey. The land claimed in the declaration lies south of this creek.

There are two counts in the declaration. The northern boundary of the land claimed in the first count begins on the eastern boundary of survey 410 at a point at least 5 chains south of the intersection of that boundary by the branch or creek, and runs nearly due west some 26.70 chains before it intersects the branch, and thence follows down the branch to the western boundary of the whole tract. The southern boundary of the tract claimed in the first count of the declaration is a line running nearly due east from a point in the western boundary of the survey 410 south of the intersection of the creek with that boundary, and 35.72 chains distant from the intersection; and the southern boundary of the land claimed in the second count is parallel with the south line as claimed in the first count, but crosses the whole original tract at a point 10 chains north of the south boundary in the first count.

Plaintiff derives title, if at all, from and under William R. Walter, and through his deed to Wilson & Cahour (not recorded.) The land granted in that deed is described therein precisely as is the land claimed in the first count, and does not embrace that part of the land in the second count which

lies between the creek and the east 26.70 chains of the north boundary in the deed. From the plats this includes in the verdict and judgment some ten acres of land to which appellee shows no title whatever.

For this error the judgment must be reversed and the cause remanded.

It may not be amiss to notice some other questions presented in the case. We find no evidence showing whether Mrs. Kate Clover, wife of Jacob Clover, formerly Kate Harnish, or Harness, be now living or dead, nor, if dead, anything showing the time of her death;—whether she ever disposed of her interest in survey 410 by will, deed, or otherwise; nor, in fact, any distinct proof showing who were her heirs at law.

The endorsement in the margin of the record of the deed of Sally Harness, purporting to be "an acknowledgment" by her and her husband, "that the deed is of no effect," does not in any manner affect the validity of the deed. In fact, if the signatures be assumed to be genuine its recitals can bind no one save themselves, and those claiming under them by grant subsequent to the recitals.

Appellant claims a bar to this action under section 4 of chapter 83, Rev. Stat. (p. 674); but while the proof shows more than seven years possession under a title deducible of record, from a person authorized to sell by the order of a court, it fails to show that such possession was by actual residence. It does not appear whether appellant *resided* on the land he bought from Schenerman or not.

Appellant also claims a defence under the sixth section of the same act. It is unnecessary to pass now on this claim, as the real facts relating to the payment of taxes probably will be made more apparent at another trial. The tax receipts of both parties, if produced, will probably show more definitely the land on which payments of taxes were, in fact, made; and evidence can probably be found, in the assessor's and collector's books, not produced on this trial. Appellant, un-

doubtedly, ought to be allowed to read in evidence the deed of Joseph Lawson to Ann Edwards, of August 2d, 1847, conveying what on the plats in evidence is marked as "Hobbs' piece." This deed embraced part of the land embraced in the verdict. Whether appellant was or was not able to follow this deed with mesne conveyances to himself, the deed would have shed some light upon the question of the location of Lawson's south line, as a "point of rock on top of bluff" is a point in the line named,—and appellant may have been able to identify that point by proof, or may have been able to show what ground was taken possession of under the deed, and thus have shown what Lawson claimed as the south boundary of his 166 acres. Again, it would have explained what part of the 166 acres was afterwards conveyed by Patterson & Peterson to Bollman as 15 acres by quitclaim, and what part thereof was conveyed as 151 acres by them to Bollman by warranty deed; and hence, what 151 acres of the 166 was conveyed by Bollman to Schenerman and by Schenerman to appellant, and hence would have tended to show on what land appellant had paid taxes.

Appellant insists that he has a good defence upon twenty years' consecutive possession by himself and his grantors. The proofs as to how long Jacob Clover occupied the land, and whether John Clover was in actual possession and for what time, and as to when Lawson took possession, is not made as definite as it seems probable it might be; and we deem it unnecessary now to pass upon that question.

Appellee contends that the testimony of Eli Glover shows that the creek was the line recognized at an early day as the boundary between the land of Sally and that of Kate, and hence appellant can claim nothing south of the creek. There is much in the record tending to show that the creek was not the line *all the way* across the survey. The survey actually contains more than 400 acres, and yet there are but about 116 acres north of the creek. This would be one-third of only 348 acres. It is true this may have been regarded as the more val-

uable land; but if so, proof on that subject ought to be produced, if possible. It may be that the creek was the line agreed on for part of the way. The proof tends to show that this land was heavily wooded, and there may have been paths or roads crossing the creek at the part where it was adopted as the line, and other parts of the creek may have been inaccessible on account of the underbrush. On another trial witnesses may be found who can give more light on these matters.

It would be interesting to learn from whom the parties now claiming title to the southern portion of this old survey, derive their survey. It might make clear the question whether Jacob Clover was not, at one time, recognized by all concerned as the owner of the entire title to the whole survey. If that were shown, the alleged partition among the Harnish sisters is of no significance. It might possibly show what became of that part of the title which seems to have been, at one time, in Henry Clover. With the exception of an undivided one-third in the 139 acres conveyed to Walton, he does not appear to have parted with any part of his title, which (if his mother be not living) would seem to have been one-third in the whole property.

The recital of a bond (said to have been given on December 11, 1811, by Jacob Clover to the ancestor of W. R. Walton) contained in the deed of April 18, 1837, made by the sons of Jacob Clover to Walton, is not evidence tending to prove that such a bond was in fact made, except as against parties claiming under some one of these sons through some grant or purchase made after the date of that deed, and hence is not evidence as against appellant.

The judgment must be reversed, and the cause remanded for a new trial.

*Judgment reversed.*